IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 1:05-cr-43 (WLS) |
| | : | |
| DARREN CANTRELL MILLER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant Darren Cantrell Miller's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2). For the reasons that follow, Miller's motion is **DENIED**.

**I.  Procedural Background**

Darren Cantrell Miller is serving a 272-month prison sentence for possession with intent to distribute more than five grams of cocaine base, aggravated assault with a deadly weapon against a federal officer, and brandishing a firearm in furtherance of a crime of violence. He moves for a sentence reduction under 18 U.S.C. § 3582(c) based on the Fair Sentencing Act of 2010 (FSA) and related amendments to the United States Sentencing Guidelines. The Parties agree that Miller is eligible for a sentence reduction. They disagree on whether a reduction is justified under 18 U.S.C. § 3553(a).

As background, Miller pleaded guilty on June 1, 2006, to a three-count superseding information. Count One charged Miller with possessing with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Count Two charged him with assaulting a federal officer in violation of 18 U.S.C. §§ 111(1) and (b). Count Three charged him with possessing a firearm in furtherance of a crime of violence — namely, the crime charged in Count Two — in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii), and 18 U.S.C. § 2.

1

As part of a plea agreement, Miller stipulated to the following facts: On June 10, 2005, agents of the Sumter County Drug Task Force obtained information from a confidential informant that Miller and others were packaging and selling illegal drugs. Based on this information, agents executed a search warrant at the identified residence, where they found eight tablets of ecstasy, 34.39 grams of crack cocaine, 12.9 grams of cocaine hydrochloride powder, and 211.3 grams of marijuana. Police also found a handgun. When the agents arrived at the residence, Miller was outside and fled on foot. He was soon captured. Miller stipulated he possessed these substances.

On July 14, 2005, agents executed a warrant for Miller, who had been released on bond but could not be located. The agents visited a residence in Plains, Georgia, identified as Miller's hideout. A lessee informed the agents that Miller had in fact been staying there. A consensual search of the residence revealed 14.7 grams of crack cocaine. Miller also stipulated to possessing these drugs.

On September 6, 2005, law enforcement agents received information that Miller was in Montezuma, Georgia, in a trailer home. Agents knocked on the door to the trailer and announced their presence. Deputy United States Marshal Reggie Hurst, a white male, shouted, "Police. Come out with your hands up!" Miller did not respond. Agent Hurst then entered the trailer and "saw [Miller] peeking around the corner pointing a gun at him" as if attempting to get a good shot. Miller fired his weapon, and the agent fired back. Miller fired the gun several times while aiming toward Agent Hurst. Neither Hurst nor Miller was shot. Agents arrested Miller and found his gun had misfired. On the way to the jail, Miller tried to talk to a local deputy, who told Miller he didn't want to talk to him because he (Miller) had tried to kill him. In response, Miller said he wasn't trying to shoot the deputy; he "was trying to shoot the white guy."

After Miller entered a guilty plea, the United States Probation Department prepared a presentence investigation report (PSR). The Court adopted the PSR during sentencing. Using the marijuana equivalency tables, the PSR held Miller accountable for 987.59 kilograms of marijuana, resulting in a base offense level of 30. The PSR increased his offense level by two for use of a dangerous weapon. The probation department cal-

2

culated an offense level of 31 for count two. Using the greater of the two offense levels and adding two levels under U.S.S.G. § 3D1.4, the PSR calculated Miller's offense level at 34, reduced to 31 for acceptance of responsibility. An offense level of 31, with Miller's criminal history category of IV, resulted in a guideline range of 151 to 188 months for Counts One and Two.

At sentencing, the Court sentenced Miller to 188 months in prison for Counts One and Two, followed by 84 months to run consecutive for Count Three. In sentencing Miller to the high end of his guideline range, the Court considered his history and the circumstances of the crime. The Court explained that "[i]t would have been a serious situation for you if one of those officers had gotten killed at the scene when you were surrounded by officers, announcing who they were, and you were in a trailer, there was nowhere for you to go, but you still sat there with a pistol that fortunately misfired." The Court also noted that Miller had a "tendency to take off whenever the police want[ed] to stop" him.

Before sentencing Miller, the Court heard argument from counsel on whether it should upward depart. The Court declined to upward depart, reasoning that the Court "has an adequate basis on which to sentence the defendant without the necessity of doing so. . . .But, for the record, the Court is agreeing that it could justify it if the Court would so determine that it needed to do so, but [th]e Court doesn't believe it needs to do so in light of the range that's available to the Court."

Miller appealed his conviction, and the Eleventh Circuit affirmed.

On August 3, 2010, President Barack Obama signed into law the FSA, which amended the penalty provisions of 21 U.S.C. § 841 by increasing the total amount of crack cocaine necessary to trigger mandatory five-year sentences from five to twenty-eight grams or more, 21 U.S.C. § 841(b)(1)(B)(iii), and ten-year sentences from fifty to two-hundred-eighty grams or more, § 841(b)(1)(A)(iii). FSA of 2010, Pub. L. No. 111-220, § 2(a)(1)-(2), 124 Stat. 2372, 2372 (codified as amended at 21 U.S.C. § 841(b)(1)(B)(iii) (2010)). This amendment, in effect, reduced the crack cocaine-powder cocaine sentenc-

ing ratio from 100-to-1 to 18-to-1. *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010).

In conformity with the FSA's mandate to the U.S. Sentencing Commission (hereinafter "U.S.S.C." or "Commission") to "promulgate . . . as soon as practicable . . . conforming amendments to the Federal sentencing guidelines . . . [that are] necessary to achieve consistency with other guideline provisions and applicable law," FSA, Pub. L. No. 111-220, § 8(1)-(2), 124 Stat. 2372, 2374, the U.S.S.C. issued emergency temporary, then permanent, amended guidelines, effective November 1, 2010, that reduced the base offense levels for various quantities of crack cocaine, Temporary Emergency Amendment to Sentencing Guidelines and Commentary, 75 Fed. Reg. 66,188-02, 66,189-02 (2010); see also U.S.S.G. app. C, amend. 750. These amendments became permanently retroactive on November 1, 2011. Submission to Congress of Amendments to the Sentencing Guidelines Effective November 1, 2011, 76 FR 24960-01, 24963-01 (2011).

Of the amendments, Amendment 750 to the Sentencing Guidelines allows a defendant to seek, and a court to grant, under 18 U.S.C. § 3582, a reduction in his sentence if the sentence was based on the § 2D1.1 offense levels for crack cocaine offenses, which the Commission lowered in conformity with the FSA. *See* U.S.S.G. § 2D1.1.

With the assistance of counsel, Miller moved for a sentence reduction under the FSA and Amendment 750. The United States opposes a reduction on the ground that "Miller's conduct at the time of his arrest, his history and characteristics, and the need to protect the public support a decision to retain the 188-month sentence already imposed."

**II. Discussion**

A federal court may not modify a sentence of imprisonment once it has been imposed except in limited circumstances. 18 U.S.C. § 3582(c). One such circumstance exists "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."§ 3582(c)(2). A district court must follow a two-step procedure when presented

with a motion to reduce sentence under amended guidelines. *United States v. Bravo*, 203 F.3d 778, 780–81 (11th Cir. 2000); *see Dillion v. United States*, 560 U.S. 817, 826–27 (2010). First, "the court must recalculate the sentence under the amended guidelines." *Bravo*, 203 F.3d at 780. Second, the court must decide whether, in its discretion and in light of the factors in § 3553, it will impose a new sentence under the amended guidelines or retain the original sentence. § 3553(a). *Id.*

### A. Miller's Amended Guideline Range

The Parties agree that Miller is eligible for a sentence reduction under the FSA guideline amendments. Because Miller possessed two grams of MDMA, 49.19 grams of cocaine base, 12.9 grams of cocaine, and 211.3 grams of marijuana, the PSR used the marijuana equivalency tables to calculate Miller's base offense level. The FSA amendments reduced the amount of marijuana equal to a gram of cocaine base in the tables. *See* U.S.S.G. app. C, amend. 750. Based on the amended equivalency tables, Miller's base offense level fell from 30 to 26. *See* U.S.S.G. §§ 2D1.1(c)(7) & cmt. n.10(D) (2011). His base offense level for Count One is increased to 28 because of a two-level enhancement for use of a deadly weapon.

Miller's offense level must then be calculated using a multiple-count adjustment under § 3D1.4. Count Two, which now carries a higher offense level, controls. Adding two levels under § 3D1.4, and subtracting three for acceptance of responsibility, Miller's new offense level is 30.

With a criminal history category of IV and an offense level of 30, Miller's guideline range for Counts One and Two is 135 to 168 months. Miller requests a 135-month sentence.

### B. Whether the Court should reduce Miller's Sentence

Although Miller is eligible for a sentence reduction, the Court declines to reduce his sentence. The current sentence is warranted and appropriate in light of the factors found in § 3553(a).

5

At 23, Miller had already shown a pattern of contempt and disregard for the safety of others, particularly law enforcement. Miller had a tendency—both in the past and during the present offense—to flee from police during questioning or stops. In fact, according to his PSR, he habitually ran from police. As the Court explained during sentencing, it is "amazing . . . that nothing more serious" happened to Miller, a bystander, or the police during his escapes. Worse still, Miller possessed a gun during his drug offense. When cornered and on the lam, he refused to surrender and tried to take the life of a federal agent. It is possible that, but for the misfire, Miller would have shot and killed an officer. That Miller committed these offenses while on probation and out on bond evinces a further disrespect for the law.

Therefore, the Court has considered the nature and circumstances of the offense and the history and characteristics of Miller. A 188-month sentence—and a total sentence of 272 months—is appropriate in light of those circumstances. The sentence reflects the seriousness of the crime and serves as a deterrent to those who would consider fleeing and using violence as acceptable means to commit and avoid prosecution for drug offenses. And although Miller's activities in prison are commendable, they do not outweigh the facts of the crime, his history and characteristics, and the need to protect the public.

### III. Conclusion

Therefore, having considered the factors in § 3553, the Court **DENIES** Miller's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2).

**SO ORDERED**, this 27th day of August, 2014.

                                            /s/ W. Louis Sands
                                          **W. LOUIS SANDS, JUDGE**
                                          **UNITED STATES DISTRICT COURT**