FILED '21 09 02 AM11:43 MDGA-ALB

## IN UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| **DARREN CANTRELL MILLER,** | : | **Crim No. 1:05-cr-00043-WLS-TQL-1** |
| **Movant,** | : | |
| | : | |
| **v.** | : | **MOTION FOR COMPASSIONATE** |
| | : | **RELEASE/REDUCTION IN SENTENCE** |
| **UNITED STATES OF AMERICA,** | : | **PURSUANT TO 18 U.S.C. § 3582 AND THE** |
| | : | **FIRST STEP ACT OF 2018** |
| **Respondent.** | : | |

COMES Movant, DARREN CANTRELL MILLER ("Miller"), appearing *pro se,* and in support of this motion would show as follows:

### I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

1

## II. <u>PROCEDURAL HISTORY</u>

A.     <u>Procedural Background</u>

On June 1, 2006, a grand jury sitting in the United States District Court for the Middle

District of Georgia, Albany Division, returned a three (3) Count Superseding Information charging

Miller. See Doc. 29.[1] Count 1s charged Miller with Possession with Intent to Distribute 5 Grams or

More of Crack Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). *Id*. Count 2s

charged Miller with Aggravated Assault Against a Federal Officer, in violation of 18 U.S.C. §§

111(a)(1) and 111(b). *Id*. Count 3s charged Miller with Brandishing a Firearm in Furtherance of a

Crime Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii). *Id*.

On June 1, 2006, after waiving his right to prosecution by indictment, Miller pled guilty to

Counts 1s, 2s, and 3s of the Superseding Information, pursuant to a written Plea Agreement. See

Docs. 30, 31, 33.

On September 15, 2006, Miller was sentenced to a term of 272 months' imprisonment, 5

years of supervised release, no Fine or Restitution, and a Mandatory Special Assessment Fee of

$300. See Docs. 43, 44.

On September 27, 2006, Miller timely filed a Notice of Appeal. See Doc. 45.

On August 15, 2007, the United States Court of Appeals for the Eleventh Circuit ("Eleventh

Circuit") issued an Order affirming Miller's convictions and sentences. See Doc. 62.

On September 27, 2019, Miller filed a Motion to Reduce Sentence Pursuant to the First Step

Act of 2018, which was granted on April 27, 2020. Miller's sentence was reduced from 272 to 219

---

[1]        "Doc." refers to the United States District Court for the Middle District of Georgia, Albany Division, in
Criminal No. 1:05-cr-00043-WLS-TQL-1, which is immediately followed by the Docket Entry Number. "PSR" refers
to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2

months' imprisonment. See Docs. 92, 94.

**B.**   <u>**Statement of the Relevant Facts**</u>

1.   <u>Offense Conduct</u>

The United States and Miller, through the advise of his counsel, agreed to the following facts:

On June 10, 2005, agents of the Sumter County Drug Task Force obtained information from a confidential informant that Miller and others were packaging and selling illegal drugs. Based on this information, agents executed a search warrant at the identified residence, where they found eight tablets of ecstasy, 34.39 grams of crack cocaine, 12.9 grams of cocaine hydrochloride powder, and 211.3 grams of marijuana. Police also found a handgun. When the agents arrived at the residence, Miller was outside and fled on foot. He was soon captured. Miller stipulated he possessed these substances.

On July 14, 2005, agents executed a warrant for Miller, who had been released on bond but could not be located. The agents visited a residence in Plains, Georgia, identified as Miller's hideout. A lessee informed the agents that Miller had in fact been staying there. A consensual search of the residence revealed 14.7 grams of crack cocaine. Miller also stipulated to possessing these drugs.

On September 6, 2005, law enforcement agents received information that Miller was in Montezuma, Georgia, in a trailer home. Agents knocked on the door to the trail-er and announced their presence. Deputy United States Marshal Reggie Hurst, a white male, shouted, "Police. Come out with your hands up!" Miller did not respond. Agent Hurst then entered the trailer and "saw [Miller] peeking around the corner pointing a gun at him" as if attempting to get a good shot. Miller fired his weapon, and the agent fired back. Miller fired the gun several times while aiming toward Agent Hurst. Neither Hurst nor Miller was shot. Agents arrested Miller and found his gun had misfired.

See Doc. 31 at 13-17.

2.   <u>Plea Proceeding</u>

On June 1, 2006, before Judge W. Louis Sands, Miller, after waiving his right to prosecution by indictment pled guilty to Counts 1s, 2s, and 3s of the Superseding Information, pursuant to a written Plea Agreement. See Docs. 30, 31, 33. In exchange for Miller's guilty plea, the government

agreed: (1) to recommend a sentence reduction for acceptance of responsibility; (2) move the court at the time of sentencing to dismiss the indictment pending against Miller; (3) that any self-incriminating information will not be used in determining the advisory guideline range; and (4) not to bring additional charges against Miller. See Doc. 31 at 9-11. The case was referred to the United States Probation Office for the preparation of the Presentence Report ("PSR").

### 3.    Presentence Report Calculations and Recommendations

Prior to sentencing, the Probation Office prepared Miller's PSR. As to Count 1s, the Probation recommended a Base Offense Level of 30 based on 987.59 kilograms of marijuana. Two (2) level were added because Miller used a dangerous weapon. The PSR calculated Miller's adjusted offense level on Count 1s to be level 32. See PSR ¶¶ 30-37. As to Count 2s, the PSR calculated an adjusted offense level of 31, using a Base Offense Level 14, and adding seventeen (17) levels for specific offense characteristics and victim related adjustments. See PSR ¶¶ 38-46. Using the offense level of 32 applicable to Count 1s, as the group with the highest offense level, and adding two (2) units pursuant to United States Sentencing Guidelines Manual (U.S.S.G.) § 3D1.4, the PSR calculated a combined adjusted offense level of 34, which was decreased to 31 for acceptance of responsibility. See PSR ¶¶ 47-56.

The Probation Office determined that Miller had nine (9) criminal history points, for a Criminal History Category of IV. See PSR ¶ 74. Based upon a Total Offense Level of 31 and a Criminal History Category of IV, the imprisonment guideline range was 151 to 188 months for Counts 1s and 2s. See PSR ¶ 103. As to Count 3s, the PSR noted that the statute required that Miller be sentenced to a minimum of 84 months, to be served consecutive to Counts 1s and 2s. See PSR ¶ 103.

4

4.     Sentencing Proceeding

On September 15, 2006, a Sentencing Hearing was held before Judge W. Louis Sands. See Doc. 43. At sentencing, the Court adopted the PSR without change. See Doc. 56 at 13. The Court calculated a Guidelines sentencing range of 151 to 188 months, with 84 months to run consecutive, based on a Total Offense Level of 31, and a Criminal History Category of IV. *Id.* The Court imposed a term of imprisonment of 188 months on Counts 1s and 2s, to run concurrent, and 84 months on Count 3s, to run consecutive, for a total term of imprisonment of 272 months. *Id.* ; Doc. 44. The Court ordered the prison term to run consecutive to an undischarged state term of imprisonment. See Doc. 56 at 13-14. Judgment was entered on September 26, 2006. See Doc. 44. Miller filed a direct appeal from the entry of judgment. See Doc. 45.

5.     Appellate Proceeding

On Appeal, Gerald Bernard Williams, appointed appellate counsel for Miller, has filed a motion to withdraw on appeal, supported by a brief prepared pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Eleventh Circuit's independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw was granted, Miller's motions for appointment of new counsel, withdrawal of guilty plea or, alternatively, an extraordinary motion for new trial and change of venue, information and privacy act request, and to proceed *in forma pauperis* were denied as moot, and his convictions and sentences were affirmed. See *United States v. Miller*, 229 F. App'x 908 (2007).

5

## III. DISCUSSION

As a preliminary matter, Miller respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. *Caldwell v. Warden,* 748 F.3d 1090 (11th Cir. 2014); *Estelle v. Gamble,* 429 U.S. 97 (1976)(same); and *Haines v. Kerner,* 404 U.S. 519 (1972)(same).

**A.    Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. §§ 3582 and The First Step Act of 2018**

18 U.S.C. § 3852(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction.

Congress has not defined the term "extraordinary and compelling," but the Sentencing Commission ("Commission") has issued a policy statement defining the term. The policy statement lists three specific examples of "extraordinary and compelling reasons," none of which apply to Miller. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). It also provides a fourth "catchall" provision if the Director of the Bureau of Prisons determines that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described." *Id.* § 1B1.13, cmt. n.1(D). Miller argues that, in light of the First Step Act, the Court is no longer bound by the policy statement. Therefore, he argues, the Court can and should exercise its discretion to determine that "extraordinary and compelling reasons" exist for his release.

6

**B.**     **"Extraordinary and Compelling Reasons" Warrant a Reduction in Miller's Sentence.**

      1.     *The Changes to the Statutory Penalties for Crack Cocaine Offenses Under 21 U.S.C. § 841*

The Anti-Drug Abuse Act of 1986 imposed especially harsh statutory penalties for drug offenses involving crack cocaine. 100 Stat. 3207. Due to that act, section 841(b) to United States Code Title 21 provided, as of 1996, for three tiers of penalties for offenders convicted of distributing or conspiring to distribute crack cocaine in violation of 21 U.S.C. § 841(a) or 846. Specifically:

- Section 841(b)(1)(C) provided for a sentencing range of up to 20 years if the offense involved less than 5 grams or an unspecified amount of crack cocaine, with possible enhancement to up to 30 years with a prior felony drug conviction;

- Section 841 (b)(1)(B)(iii) provided for a sentencing range of 5 to 40 years if the offense involved "5 grams or more" but less than 50 grams of crack cocaine, with possible enhancement to 10 years to life with a prior felony drug conviction; and

- Section 841(b)(1)(A)(iii) provided for a sentencing range of 10 years to life if the offense involved "50 grams or more" of crack cocaine, with possible enhancement to 20 years to life with a prior felony drug conviction, or mandatory life with two prior felony drug convictions.

21 U.S.C. §§ 841(b), 851 (1996).

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 (the "FSA"). 124 Stat. 2372. It did so because the Sentencing Commission and public had long concluded that the 1986 Anti-Drug Abuse Act's penalty scheme for crack-cocaine offenses was far too harsh and also had a disparate impact on African-American defendants. See *Dorsey v. United States*, 567 U.S. 26.0, 268-69 (2012). Specifically, section 2 of the FSA changed the penalty structure for crack offenses, as follows:

- Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved less than 28 grams or an unspecified amount of crack cocaine, with possible enhancement to up to 30 years with a prior felony drug conviction;
- Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack cocaine, with possible enhancement to 10 years to life with a prior felony drug conviction; and

- Section 841(b)(1)(A)(iii) now provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" of crack cocaine, with possible enhancement to 20 years to life with a prior felony drug conviction, or mandatory life with two prior felony drug convictions.

21 U.S.C. §§ 841(b), 851 (2018); see *Dorsey*, 567 U.S. at 269 (explaining effect of Section 2 of the FSA).

The FSA went into effect immediately (August 3, 2010), and, partly to more thoroughly put an end to the "disproportionate status quo," the Supreme Court held that the new penalty structure would apply to any defendant sentenced after August 3, 2010, even if the offense was committed prior to that date. *Dorsey*, 567 U.S. at 278.

**C.**   **Miller Is Eligible for a Reduced Sentence Under Section 404 of the First Step Act**

**Note:** Although Miller has already filed a Motion under FSA 2018 and received a 53-month sentence reduction (from 272 to 219 months' imprisonment), Miller contends that the Court erred in properly calculating his sentence.

Section 404 of the First Step Act permits courts to impose reduced sentences on any prisoner still serving a sentence for a crack-cocaine offense if that sentence was imposed when the pre-FSA penalty structure still applied. The Act establishes its remedy in two steps, and it clearly applies to Miller at each step.

First, the Act defines what offenses are covered by its remedy:

> Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 11 1220; 124 Stat. 2372), that was committed before August 3, 2010.

See First Step Act, Title IV, Sec. 404(a); see also Fair Sentencing Act. Miller's drug offenses are "covered offenses" because Section 2 of the FSA "modified" the "statutory penalties" under § 841(b) for "violation[s]" of 21 U.S.C. §§ 841(a) and 846 that involved crack cocaine. Miller's offense involved crack cocaine, and committed the violation before August 3, 2010.

Second, the Act provides the circumstances under which a district court can reduce the sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced: A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 11 1-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

*Id.*, Section 404(b). This provision plainly applies to Miller because this Court previously "imposed a sentence" on him "for a covered offense." Through this motion, he now moves for a reduced sentence under Section 404(b) of the First Step Act and in accordance with the FSA's reduced statutory penalties.

Third, the Act provides narrow limitations on this sentencing reduction power. The Act delineates that a court shall not entertain a motion made under Section 404 of the First Step Act to reduce a sentence "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or "if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." *Id.*, Sec. 404(b). Neither of these

limitations apply to Miller, and he is currently serving a sentence of 276 months under the pre-FSA

statutory penalty structure for a crack cocaine offense, and this is his first Section 404 motion.

In summation, proving eligibility under the First Step Act is straightforward. A defendant is

eligible if he was convicted of a crack cocaine offense, was sentenced when the pre-FSA statutory

penalties were still in effect, and continues to serve a sentence that has not already been reduced to

the post-FSA statutory penalties. Because Miller satisfies all of these requirements, the Court has

the authority to impose a reduced sentence for his crack cocaine conviction.

**D.     The Court Should Order a Hearing for Miller to Impose a Reduced Sentence**

The only guidance Congress has given regarding the authorized extent of Section 404 relief

is that the district court may impose a reduced sentence "as if" the FSA's reduced crack cocaine

penalties "were in effect at the time the covered offense was committed." This broad grant of

resentencing authority contains one implied limitation, that the court cannot impose a sentence lower

than the statutory mandatory minimum applicable under the FSA — the current statutory penalties.

For example, if a defendant was convicted at trial in 2009 where the jury found he distributed "50

grams or more" of crack cocaine, his post-FSA mandatory minimum sentence would be five years,

because that is the post-FSA minimum for an offense involving 28 grams or more but less than 280

grams of crack. 21 U.S.C. § 841(b)(1)(B)(iii). In that case, the district court, acting pursuant to

Section 404, could not reduce the defendant's sentence below five years.

Accordingly, while Miller was originally subject to a statutory penalty of 5 to 40 years, with

possible enhancement to 10 years to life with a prior felony drug conviction, 21 U.S.C. §

841(b)(1)(B), under the FSA, his offense involving 5 grams or more of crack cocaine now subjects

him to a statutory penalty up to 20 years, with possible enhancement to up to 30 years with a prior felony drug conviction, 21 U.S.C. § 841(b)(1)(C). The FSA has therefore reduced his maximum statutory term from up to 30 years to up to 20 years; with a prior felony drug conviction, a mandatory 10 years to life, to up to 30 years.

E.    **Miller is Entitled to An Evidentiary Hearing So That Miller May Further Prove His Meritorious Ground for Relief, Resolve Any Disputed Facts, and Expand An Incomplete Record.**

Here, Miller urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 248 months to time served. The government asserts that Stanback is ineligible for consideration of a reduction in his sentence, and in the alternative, that if he is eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

1.    Drug Weight

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

11

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id*. at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. In this case, Miller

12

was pled guilty to possession with intent to distribute 5 Grams or More of crack cocaine. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 987.59 kilograms of marijuana equivalent referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

## 2.    Discretion of the Court

The court under 18 U.S.C. § 3582(c)(1)(B) which states that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute", i.e., the First Step Act of 2018, Section 404, "Application of the Fair Sentencing Act", and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing

factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, ordered that the motion be denied. Miller is currently serving a 219-month sentence.

Here, Miller claims that if he had been prosecuted after passage of the Fair Sentencing Act, the government would have had to allege 5 grams or more crack cocaine even though he was held accountable for 987.59 kilograms of marijuana equivalent.

See *United States v. Haynes*, No. 8:08-CR-441, 2019 WL 1430125 (D. Neb., Mar. 29, 2019) appeal docketed, No. 19-1701 (8th Cir. Apr. 4, 2019). There, a defendant was indicted and pleaded guilty to possession with intent to deliver 5 grams or more of cocaine base. In the plea agreement, he agreed to be held responsible for 20-35 grams of cocaine base, and the PSR said he was responsible for at least one ounce (28.35 grams) of cocaine base. *Id.* at *1. He sought relief under the First Step Act based on his plea of guilt to the 5 grams of cocaine base. *Id.* at *2. The court denied relief, finding that if the Fair Sentencing Act had been in effect at the time the defendant was indicted, the government would have charged him under 18 U.S.C. § 841(b)(1)(B)(iii). This approach was rejected by the court in *Dodd*, 372 F.Supp.3d at 799, 2019 WL 1529516 at *3. There, the court found that such a speculative claim is insufficient and that many things might have been different at the time the defendant was indicted and tried. The court was unwilling to engage in "a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered." *Id.* See also *United States v. Pierre*, 372 F.Supp.3d 17, 2019 WL 1495123 (D.R.I. Apr. 5, 2019) (holding that in determining eligibility under the First Step Act, court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 and should not delve into the particulars of the record to determine how the defendant committed the offense of conviction or how the facts would have hypothetically affected the charges brought under the statutory scheme).

14

The Fourth Circuit Court finds the reasoning in *Dodd* and *Pierre* persuasive. While it is possible that the government would have proceeded against *Stanback* under 18 U.S.C. § 841(b)(1)(A), it also is possible that it would not have chosen to do so. The government could have determined that evidence was insufficient to prove the quantity beyond a reasonable doubt, or if it did indict him on that amount, the parties might have entered into a plea agreement involving less than 280 grams of cocaine base. The retroactive assumption suggested by the government simply is too speculative a basis on which to determine Stanback's eligibility for a sentence reduction. Thus, the Fourth Circuit declines to assume that Stanback would have been charged and convicted of possessing more than 280 grams of cocaine base if the Fair Sentencing Act had been in effect at the time he was convicted.

The only guidance Congress has given regarding the authorized extent of Section 404 relief is that the district court may impose a reduced sentence "as if" the FSA's reduced crack cocaine penalties "were in effect at the time the covered offense was committed." This broad grant of resentencing authority contains one implied limitation, that the court cannot impose a sentence lower than the statutory mandatory minimum applicable under the FSA — the current statutory penalties. For example, if a defendant was convicted at trial in 2009 where the jury found he distributed "50 grams or more" of crack cocaine, his post-FSA mandatory minimum sentence would be five years, because that is the post-FSA minimum for an offense involving 28 grams or more but less than 280 grams of crack. 21 U.S.C. § 841(b)(1)(B)(iii). In that case, the district court, acting pursuant to Section 404, could not reduce the defendant's sentence below five years.

Applying the First Step Act calculations to this case, Miller's Base Offense Level will be reduced to level 14. See also 2018 Sentencing Guidelines, indicating that At least 2.8 G but less than

5.6 G of Cocaine Base" calls for a Base Offense Level of 14, pursuant USSG § 2D1.1(c)(13). With

the application of the 2-level enhancement for use of a dangerous weapon, Miller's Total Offense

Level would now be 16. Based upon a Total Offense Level of 16 and a Criminal History Category

of IV, the guideline imprisonment range is 33 to 41 months.

> 3.    Assault

Count 2s: Assaulting, resisting, or impeding certain officers or employees, in violation of 18

U.S.C. § 111, which reads:

(a)    In General.—Whoever—

  (1)    forcibly assaults, resists, opposes, impedes, intimidates, or interferes
        with any person designated in section 1114 of this title while engaged
        in or on account of the performance of official duties; or
  (2)    forcibly assaults or intimidates any person who formerly served as a
        person designated in section 1114 on account of the performance of
        official duties during such person's term of service, shall, where the
        acts in violation of this section constitute only simple assault, be fined
        under this title or imprisoned not more than one year, or both, and
        where such acts involve physical contact with the victim of that
        assault or the intent to commit another felony, be fined under this title
        or imprisoned not more than 8 years, or both.

(b)    Enhanced Penalty.—

Whoever, in the commission of any acts described in subsection (a), uses a deadly or
dangerous weapon (including a weapon intended to cause death or danger but that
fails to do so by reason of a defective component) or inflicts bodily injury, shall be
fined under this title or imprisoned not more than 20 years, or both.

(June 25, 1948, ch. 645, 62 Stat. 688; Pub. L. 100–690, title VI, § 6487(a), Nov. 18, 1988, 102 Stat.

4386; Pub. L. 103–322, title XXXII, § 320101(a), Sept. 13, 1994, 108 Stat. 2108; Pub. L. 104–132,

title VII, § 727(c), Apr. 24, 1996, 110 Stat. 1302; Pub. L. 107–273, div. C, title I, § 11008(b), Nov.

2, 2002, 116 Stat. 1818; Pub. L. 110–177, title II, § 208(b), Jan. 7, 2008, 121 Stat. 2538.)

Miller pled guilty to Count 2s, which calls for a Base Offense Level of 14. However, Miller received an additional 17 levels for specific offense characteristics and victim related adjustments— these offense level enhancements were not proven without reasonable doubt, hence, under *Alleyne*, this court is not free to impose a penalty based on enhancements referenced in the PSR.

Eleventh Circuit remands to district court to clarify standard of proof in supervisor enhancement. (755) Defendant contended that the district court used the wrong standard of proof in determining that he was an organizer, leader, manager or supervisor of the criminal activity. The court concluded that "the evidence [was] sufficient to show that at least two people were possibly working for [defendant]." The 11th Circuit found that it could not tell from the court's language whether it utilized the proper standard, and thus re-manded for re-sentencing to ensure the proper preponderance of the evidence standard was applied. *U.S. v. Cornog*, 945 F.2d 1504 (11th Cir. 1991).

See also, *United States v. Ama*, 2017WL1325247 (10th Cir. April 11, 2017) (UT): The panel finds that 18 U.S.C. § 111, assault on a federal employee, is not a violent felony as defined by the ACCA's force clause. It says that § 111(a) is not divisible and the modified categorical approach is not applicable. The government argued (as it has in numerous Johnson habeas pleadings) that the modified categorical approach could be used to determine which of the alternative means were used to commit the offense. The panel explains the government is wrong because § 111(a)'s phrase "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" are not elements, "but alternative means of committing the actus reus element of the offense." The panel also dismisses the government's argument that § 111(a) requires forcible conduct. It rules that even if the term "forcibly" extends to all six means, the offense requires force, but not violent force as defined in *Johnson I* (559 U.S. at 140). The panel points out that "even minor contact, such as laying one's

finger on another person without lawful justification is forcible." In other words, "mere forcible contact" which is enough to convict under § 111(a), does not rise to the level of physical force defined in *Johnson I*. The panel cites to numerous cases which illustrate that "mere contact" was enough to sustain a § 111(a) conviction.

*United States v. Gonzalez*, 122 F.3d 1383 (11th Cir. 1997). The offense of obstruction of a federal officer (18 U.S.C. § 1501) is a lesser included offense of forcibly assaulting, resisting, impeding or interfering with a federal official (18 U.S.C. § 111). The failure to instruct the jury on the lesser offense resulted in reversing the conviction. The Supreme Court in *Sansone v. United States*, 380 U.S. 343, 348-50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965), developed a framework for analyzing whether a lesser included offense charge was required:

> [I]n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it ... is entitled to an instruction which would permit a finding of guilt of a lesser offense. But a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and the greater offenses ... A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

*Id*. (internal quotation marks and citations omitted).

Here, the element of force was required for a conviction under section 111 but not for conviction under section 1501. This element (force) is disputed by Miller. Under *Sansone*, then, the jury should have been instructed on section 1501 as a lesser included offense. Cf. *United States v. Giampino*, 680 F.2d 898, 901 (2d Cir.1982) ("There is no dispute that a § 1501 offense was 'included' in the § 111 offense. Every element required to establish [the defendant's] obstruction of [the federal agent] in violation of § 1501 was also essential for establishment of [the defendant's]

18

guilt under § 111. Thus, if the prosecution proved a violation of § 111, it necessarily also proved a violation of § 1501."). This Court should vacate Miller's conviction under section 111 and remand it for a new trial.

Miller therefore requests this Court to order this case to be vacated and to impose a reduced sentence under the FSA's applicable statutory range, i.e. the current statutory penalties. Miller requests this Court order an updated PSR so that Miller's sentencing guidelines may be recalculated in accordance with law. At such a hearing, all the relevant statutory sentencing factors under 18 U.S.C. § 3553(a) will be addressed in order to achieve a sentence that his sufficient but not greater than necessary. The government may argue that a full resentencing is foreclosed by *Dillon v. United States*, 560 U.S. 817, 824-26, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010), where the Supreme Court found that full sentencing rehearings are not authorized by retroactive guideline reductions. However, the Fourth Circuit does not reach this argument because it finds that there is no need to do so. The court shall consider the § 3553(a) factors. See *United States v. Davis*, 679 F.3d 190 (4th Cir. 2012) (holding that in the context of a Rule 35(b) motion, a district court can consider § 3553(a) factors). See also: https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last viewed April 30, 2021) (noting in newsletter from the United States Sentencing Commission that courts will have to decide whether a resentencing under the Act is a plenary resentencing proceeding or a more limited resentencing and stating "In either instance, the Act made no changes to 18 U.S.C. § 3553(a), so the courts should consider the guidelines and policy statements, along with other 3553(a) factors, during the resentencing.")

Under 18 U.S.C. § 3582(c)(2), to modify Miller's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The

19

court should find that a sentence of 33 to 41 months on Count 1s and 84 months on Count 3s is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

As the court in *Boulding* and many others have held, the First Step Act calls for a level of discretion that is previously unseen in sentencing statutes. See 379 F. Supp. 3d at 653 ("The First Step Act is different. The Sentencing Commission has nothing to do with it. Rather, Congress has directly authorized the possible reduction under 18 U.S.C. § 3582(c)(1)(B)."). The First Step Act does not "impose any extrinsic limits on a sentencing court." *Mack*, 2019 WL 3297495, at *12.

In the exercise of its discretion under Section 404(b) of the First Step Act, the Court must consider all of the factors under 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (paragraph 2) of this subsection." See *Rose*, 379 F. Supp. 2d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act."); see also *United States v. Romano*, 794 F.3d 317, 339 (2d Cir. 2015) (recognizing the relevance of the § 3553(a) factors in considering the length of a sentence). Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

20

In addition, the statute requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1), (3),(4), and (6).

Section 404 of the First Step Act applies to *Booker*, *Apprendi*, and *Alleyne*. Section 404– Is it a "plenary" resentencing? Section 404 is a "resentencing," not a narrow adjustment as under 3582(c)(2). Courts apply *Booker*, *Apprendi*, *Alleyne*, and the 3553(a) factors regardless of whether it is called a "plenary" resentencing.

## IV. CONCLUSION

For the above and foregoing reasons, Miller prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582 and First Step Act of 2018, based upon the "extraordinary and compelling reasons" and reduce his sentence or hold a hearing as soon as possible.

Respectfully submitted,

Dated: ~~May~~ Aug 18, 2021.

Darren Miller

DARREN CANTRELL MILLER
REG. NO. 87992-020
FCI YAZOO CITY MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 5000
YAZOO CITY, MS  39194
Appearing *Pro Se*

21

Case 1:05-cr-00043-WLS-TQL   Document 96   Filed 09/02/21   Page 22 of 22

## CERTIFICATE OF SERVICE

      I hereby certify that on ~~May~~ Aug 18, 2021, a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence pursuant to 18 U.S.C. § 3582 and the First Step Act of 2018 was sent via U. S. Mail, postage prepaid, to Michelle Schieber, Assistant U.S. Attorney at U. S. Attorney's Office, 300 Mulberry St., 4th Fl., Macon, GA 31202.

Darren Miller

DARREN CANTRELL MILLER