# IN UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | | |
|---|---|---|
| **DARREN CANTRELL MILLER,** | : | **Crim No. 1:05-cr-00043-WLS-TQL-1** |
| | : | |
| Movant, | : | **SUPPLEMENTAL MOTION TO** |
| | : | **EMERGENCY MOTION FOR** |
| v. | : | **REDUCTION IN SENTENCE PURSUANT** |
| | : | **TO 18 U.S.C. § 3582(C)(1)(A)(I) BASED** |
| **UNITED STATES OF AMERICA,** | : | **ON EXTRAORDINARY AND** |
| | : | **COMPELLING REASONS RELATED** |
| Respondent. | : | **TO COVID-19 PANDEMIC** |

COMES Movant, DARREN CANTRELL MILLER ("Miller"), appearing *pro se*, and in connection with his Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Based on Extraordinary and Compelling Reasons Related to COVID-19 Pandemic ("Motion for Compassionate Release"), Miller writes to supplement his motion and to respectfully request that the Court grant his motion and immediately release him in light of the anticipated and increasingly dire impact of the COVID-19 pandemic and his recent rare form of cancer diagnosis.

### A. Miller's Current Conditions of Confinement and Health Conditions

Miller, age 39, was recently diagnosed with Salivary Gland Cancer. See Exhibit 1, Medical Documents; and Exhibit 2, About Salivary Gland Cancer.

> ***COVID-19***. COVID-19 is the disease caused by the new coronavirus that emerged in China in December 2019. COVID-19 symptoms include cough, fever or chills, shortness of breath or difficulty breathing, muscle or body aches, sore throat, new loss of taste or smell, diarrhea, headache, new fatigue, nausea or vomiting and congestion or runny nose. COVID-19 can be severe, and some cases have caused death.

As the Court knows, Miller is 39 years-old and in poor health. He has served almost 18 years of his sentence. During his time in custody, Miller has been diagnosed with salivary gland cancer (in

1

his throat) and was scheduled to get his surgery done in January 2022 but has not received treatment as of yet. Hence, he is still awaiting surgery to remove the cancer to be followed by radiation or possible chemotherapy, which reflects a deterioration in Miller's medical health. Miller has active cancer that is not being treated because of the shortages in resources inside the prison, thus, making him at even greater risk.

Based on these conditions, Miller moves for compassionate release pursuant to the First Step Act of 2018. As described in our previous submissions, while Miller is not eligible for a reduced sentence under § 404 of the First Step Act ad in light of *Booker*, *Apprendi*, and *Alleyne*– satisfy the standard of "extraordinary and compelling" circumstances in application note 1(B) to § 1B1.13 of the United States Sentencing Guidelines ("U.S.S.G."), the Court is no longer bound by either the United States Sentencing Guidelines' limitations or the BOP policy statement, given that both were promulgated before passage of the First Step Act. *United States v. Brown*, 2019 WL 4942051 (S.D. Iowa Oct. 8, 2019) (in the absence of a controlling policy statement from the Commission, district judges are now free to consider "the vast variety of circumstances that may constitute 'extraordinary and compelling'") (emphasis added) (collecting cases).[2]

---

[2]

See also *United States v. Kepa Maumau*, 2:08-cr-00758-TC-11 (D. Utah) (collecting cases); *United States v. Early*, No. 02-CR-10125-002 (EKD), 2019 WL 4576281, at *1 (W.D. Va. Sept. 20, 2019) (determining that "[b]ecause [defendant] is under 70 years of age, the court must therefore consider the factors set forth in § 3553(a) to determine if 'extraordinary and compelling reasons' warrant a sentence reduction" as required under Section 603 of the First Step Act and without reference to the Sentencing Commission's definition in Section 1B1.13 of the United States Sentencing Guidelines); *United States v. Fox*, No. 14-CR-03 (DBH), 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Cantu*, 05-CR-458, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019) (because there is no applicable policy statement, "the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief"); *United States v. Beck*, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019) (finding that there is "no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act" because U.S.S.G. § 1B1.13 applies only to motions for compassionate release filed by the BOP director, and therefore U.S.S.G. § 1B1.13 "does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction").

2

**B.     COVID-19 Is a Public Health Disaster That Threatens Vulnerable Incarcerated Persons like Miller.**

The COVID-19 pandemic continues to roil the United States. As of October 4, 2022, the BOP has 143,128 federal inmates in BOP-managed institutions and 13,942 in community-based facilities. There have been 308 federal inmate deaths and 7 BOP staff member deaths attributed to COVID-19 disease. See https://www.bop.gov/coronavirus/ (last of October 4, 2022). More so, USP Yazoo City (where Miller is currently incarcerated), had 2 inmate deaths attributed to COVID-19. Bottom line, Federal facilities are not immune.

Conditions of confinement create an ideal environment for the transmission of highly contagious diseases like COVID-19. Because inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons. Inmates share small cells, eat together and use the same bathrooms and sinks. . . . . They are not given tissues or sufficient hygiene supplies"); Joseph A. Bick (2007). *Infection Control in Jails and Prisons*. Clinical Infectious Diseases 45(8):1047-1055, at https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"). BOP employees are complaining that they lack masks and gloves, hand sanitizer, and even soap.

"The [BOP] management plan itself acknowledges [that] symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up. . . . We don't know who's infected." *Manrique*, 2020 WL 1307109, at *1.10.

Indeed, as the Second Circuit recently observed, present information about the COVID-19

3

epidemic and the BOPs' prior failings in 2019 to adequately protect detainees and allow them access to counsel and their families following a fire and power outages suggest that the virus' impact will likely be "grave and enduring." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 WL 1320886, at *12 (2d Cir. Mar. 20, 2020).

### *BOP Amid Covid-19*

One consequence of overcrowding is that prison officials have a difficult time providing adequate health care.

In 2011 the U.S. Supreme Court ruled that overcrowding undermined health care in California's prisons, causing avoidable deaths. The justices upheld a lower court's finding that this caused an "unconscionable degree of suffering" in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Amid a worldwide pandemic, such conditions are treacherous. Some of the worst COVID-19 outbreaks in U.S. prisons and jails are in places – like Louisiana and Chicago – whose prison health systems have been ruled unconstitutionally inadequate. Criminologists and advocates say many more people should be released from jails and prison, even some convicted of violent crimes if they have underlying health conditions.

The decision to release prisoners cannot be made lightly. But arguments against it discount a reality recognized over two centuries ago: The health of prisoners and communities are inextricably linked. Coronavirus confirms that prison walls do not, in fact, separate the welfare of those on the inside from those on the outside.

Miller has moved this Court for a reduction in sentence on September 2, 2021. See Doc. 96.[3] Recently, Miller has been diagnosed with salivary gland cancer (a rare kind of cancer in his throat) and was scheduled to get his surgery done in January 2022 but received no treatments or examinations, or any kind of plan for his cancer 's condition is now even more precarious: he faces the threat of coronavirus (COVID-19) within the prison's walls and is currently at risk because the BOP has no planning treatment for him. After a cancer diagnosis, staging provides important information about the extent of cancer in the body and anticipated response to treatment, before it spreads. Given his underlying health conditions, Miller will be particularly vulnerable[4] "when, not if" coronavirus comes to the BOP,[5] an "incubator" for the disease[6] with "petri-dish-like conditions."[7]

---

[3] "Doc." refers to the Docket Report in the United States District Court for the Middle District of Georgia, Albany Division in Criminal No. 1:05-cr-00043-WLS-TQL-1, which is immediately followed by the Docket Entry Number.

[4] Roni Caryn Rabin, *Coronavirus Threatens Americans With Underlying Conditions*, NEW YORK TIMES (Mar. 12,2020), https://www.nytimes.com/2020/03/12/health/coronavirus-midlife -conditions.html ("The new coronavirus is a serious threat to the elderly" and to "those with chronic health conditions . . . Heart disease, cancer, diabetes – all of these can exacerbate a coronavirus infection, studies show, increasing the odds of severe disease and death.")

[5] Rich Schapiro, *Coronavirus Could 'Wreak Havoc' on U.S. Jails, Experts Warn*, NBC NEWS (Mar. 12, 2020), https://www.nbcnews.com/news/us-news/coronavirus-could-wreak-havoc-u-s-jails- experts-warnn1156586 ("We're in a very perilous stage right now," said Dr. Homer Venters, the former chief medical officer of the New York City jail system. "It's just a matter of time before we see cases inside jails and prisons.").

[6] Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about- becoming-coronavirusincubators.

[7] P. Leila Barghouty, *U.S. Prisons Are Not Ready for Coronavirus*, THE OUTLINE (Mar. 6, 2020), https://theoutline.com/post/8770/prison-coronavirus-covid-19-outbreak?zd=1&zi=oixu2i52; see also Kaiser Health News, *Could Coronavirus Cause a National Prison Lockdown?*, U.S. NEWS & WORLD REPORT (Mar. 13,2020), https://www.usnews.com/news/healthiest-communities/articles/2020-03-13/could-coronavirus-cause-anational-prison-lockdown ("Though small by comparison, the federal system sheds light on issues many state, county and local officials are grappling with now. Because the facilities are typically dense and crowded, they could become prime breeding grounds for the highly contagious coronavirus."); Chris Strohm, *Prisons' Coronavirus Risk Puts Justice Department Under Pressure*, BLOOMBERG

According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[8] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[9]

Patients with cancer have weakened immune systems, due to their underlying condition or treatment. Having a weakened immune system makes it harder to fight off diseases. At the moment, there is limited data on whether patients with cancer or those who are receiving treatments that suppress their immune system, such as chemotherapy, could be more severely affected.

### *If I have cancer, am I at higher risk of getting COVID-19?*

COVID-19 is still new, and research is still developing on this virus and its effect on cancer patients. Assumptions based on information regarding the risk of infections in general for cancer patients:

When the body's white blood cells, which fight infections, are low or do not function well, the body is unable to fight infections effectively. Some treatments, such as chemotherapy and radiation therapy, can cause side effects that decrease the body's

---

(Mar. 12, 2020) (noting concerns that coronavirus outbreak "could spark riots"); Courtney Bublé, *Federal Prison Employees and Others Question BOP's Readiness for Coronavirus*, GOV. EXEC. (MAR. 11, 2020), https://www.govexec.com/management/2020/03/federal-prison-employees-and-others-question-bops-readiness-coronavirus/163692/ ("History has shown time and time again that the Federal Bureau of Prisons has never been a proactive agency, but instead a reactive agency."); Joshua Eaton, *Federal Prisons Don't Have Coronavirus Test Kits for Inmates*, ROLL CALL (Mar. 6, 2020), https://www.rollcall.com/2020/03/06/federal-prisons-dont-have-coronavirus-test-kits-for-inmates/ ("Federal prisons, whose inmates may be a high-risk population for a coronavirus outbreak, do not have kits to test for the disease available.").

[8] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[9] Prisons and Jails are Vulnerable to COVID-19 Outbreaks, The Verge (Mar. 7, 2020) at https://bit.ly/2TNcNZY.

6

ability to fight infections. For this reason, cancer patients who are in active treatment may be at a higher risk for COVID-19.

*Are all cancer patients at risk, or only those in active treatment?*
At the moment, there is limited data on whether patients with cancer or those who are receiving treatments could be more severely affected. Patients who are undergoing active treatment for cancer are presumably at higher risk than those who are in remission. However, the after-effects of cancer treatment can be long term.

Hence, it is appropriate for Miller to be released into an environment where he and his loved ones can control and direct his medical care. It is important for all of us to remember that convicted criminals are sent to prison as punishment—not for punishment. People who are severely debilitated or are in the midst of dying are usually no longer a threat to society, and there is not a compelling social advantage to keeping them in prison.

**Note:** According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is a new disease and there is limited information regarding risk factors for severe disease. Based on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19.

   a. Based on what we know now, those at high-risk for severe illness from COVID-19 are:
      - People 60 years and older
      - People who live in a nursing home or long-term care facility
   b. People of all ages with underlying medical conditions, particularly if not well controlled, including:
      - Cancer
      - Chronic kidney disease
      - Chronic lung diseases, including COPD (chronic obstructive pulmonary disease), asthma (moderate-to-severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension
      - Dementia or other neurological conditions
      - Diabetes (type 1 or type 2)
      - Down syndrome
      - Heart conditions (such as heart failure, coronary artery disease, cardiomyopathies or hypertension)
      - HIV infection
      - Immunocompromised state (weakened immune system)

- Liver disease
- Overweight and obesity
- Pregnancy
- Sickle cell disease or thalassemia
- Smoking, current or former
- Solid organ or blood stem cell transplant
- Stroke or cerebrovascular disease, which affects blood flow to the brain
- Substance use disorders

are the hallmark of those who are most endangered by the instant pandemic. These are "extraordinary and compelling reasons" for his release. See Note 1(A), § 1B1.13 (expressly recognizing that "other reasons" may exist for granting compassionate release), see Note 1(D), § 1B1.13 Note 1(D) (recognizing that extraordinary and compelling reasons exists "other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Here, Miller's high susceptibility to COVID-19 falls within the purview of this catchall. Moreover, courts have noted that while § 1B1.13 provides "helpful guidance" for determining what constitutes an extraordinary and compelling reason to warrant a sentence reduction, the inquiry does not end there. Rather, district courts have the freedom to shape the contours of what constitutes an extraordinary and compelling reason to warrant compassionate release. Given the highly infectious nature of COVID-19, the inability in a facility like USP to practice any of the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission, and the fact that Miller suffers from ailments that have already been identified as "high risk," this Court should find that Miller's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.

A recent letter by fourteen U.S. senators of both parties underscores this position. Writing to U.S. Attorney General William Barr and BOP Director Michael Carvajal, they stated: "[We] urge you to take necessary steps to protect [inmates in Federal custody] particularly by using existing

8

authorities under the First Step Act (FSA). . . . We have reviewed the Federal Bureau of Prisons (BOP) COVID-19 Action Plan, which . . . notably does not include any measures to protect the most vulnerable staff and inmates. . . . [I]t is important . . . that the most vulnerable inmates are released or transferred to home confinement, if possible." And as the Second Circuit noted about COVID-19 in a unanimous recent opinion, "The impact of this recent emergency on jail and prison inmates, their counsel . . . , the United States Attorneys, and the BOP, including the individual Wardens and the personnel of each facility, is just beginning to be felt. Its likely course we cannot foresee. Present information strongly suggests, however, that it may be grave and enduring." *Fed. Defs. of New York, Inc.*, 2020 WL 1320886, at *12.

Finally, in the last year(s), other jails and prisons have already started to proactively release elderly and sick inmates who are at high risk of infection, as well as releasing as many nonviolent offenders as possible in an effort to reduce the incarcerated population and thus reduce the risk of spread. For example, on March 25, 2020, New York City announced that it would release 300 inmates from Rikers Island. Approximately 1,700 inmates have been released from Los Angeles County Jails, and 1,000 inmates are to be released from New Jersey jails. Therefore, while COVID-19 remains an unprecedented emergency, many states (and politicians) have recognized that they have a duty to flatten the curve inside incarcerated spaces. So, too, should this Court.

Releasing Miller not only helps protect him from infection, it will help alleviate the burdens on the already overtaxed BOP medical system. Indeed, the standard of medical care at the BOP has previously been criticized as inadequate even with respect to routine medical treatment. Moreover, it is unclear whether Miller will even be able to take basic proactive preventative measures, like regular hand-washing and use of hand-sanitizer (even assuming such products are available).

9

In short, Miller is particularly vulnerable to infection, and, if the virus does infect him, it is more likely to be fatal. See *United States v. Jesus Antonio Mondaca, Sr.*, 89 Crim. 000655 at 6 (S.D. Ca. March 3, 2020 ) (DMS) (compassionate release petition granted, where, among other reasons, elderly defendants had "become increasingly vulnerable to victimization within the correctional facility"). The danger of the situation that Miller and other inmates like him face raises constitutional concerns of cruel and unusual punishment, given that they are at greater risk of contracting lethal infections such as the novel coronavirus due to factors such as age or pre-existing medical conditions. See *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (citation and internal quotation marks omitted). Indeed, calls for releasing prisoners at risk from coronavirus have come from all quarters. Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons."[10] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[11] Closer to home, Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency

---

[10] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) at https://cnn.it/2W4OpV7.

[11] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) at https://apnews.com/af98b0a38aaabedbcb059092db356697.

10

clemency to elderly and sick prisoners,[12] as has Manhattan District Attorney Cyrus Vance.[13] District Attorney Gonzalez has acknowledged that, "Once the virus spreads to our prisons, older incarcerated people and those with preexisting health problems will be in the virus's crosshairs and the prisons will not have the capacity to care for them."[14]

### C. Courts Have Granted Compassionate Release in Light of the Instant Pandemic.

Miller urges this Court to consider the following compassionate release grants:

*United States v. Meron, 2020 WL 5257611, at \*1 (E.D. Cal. Sept. 3, 2020)*
- FCI Sheridan, 33-month sentence for wire fraud
- Release date December 2021
- Renewed motion
- Survived testicular cancer, psoriasis, medication for erectile dysfunction
- Meron argues that his history of cancer, low testosterone levels and use of corticosteroids for his psoriasis put him at high risk for serious complications if he is infected with COVID-19.
- Lists expert analysis of psoriasis and past cancer, corticosteroid use as a suppressant of immune system
- *United States Nemec*, No. 16-CR-00134-SI-1, 2020 WL 4547158, at \*2 (N.D. Cal. Aug. 6, 2020) (finding "extraordinary and compelling reasons" existed where defendant was not able to control his arthritis and psoriasis without the use of immunosuppressing drugs "that would render him particularly vulnerable to COVID-19"); see also *United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL 1982872, at \*2 (N.D. Cal. Apr. 27, 2020) (noting persons with "severe forms of psoriasis requiring immunosuppressive therapies may be at greater risk of infection" from COVID-19 and finding extraordinary and compelling reasons for release).

*United States v. Tidwell, 2020 WL 4504448, at \*1 (E.D. Pa. Aug. 5, 2020)*

---

[12] Sarah Lustbader, *Cornoavirus: Sentenced to COVID-19*, The Daily Appeal (March 12, 2020), https://theappeal.org/sentenced-to-covid-19-2/.

[13] James D. Walsh, *Will Rikers Island Free Inmates Because of the Coronavirus?*, Intelligencer (Mar. 17 2020), https://nymag.com/intelligencer/2020/03/will-rikers-island-free-inmates-because-of- coronavirus.html ("In a joint statement issued on Tuesday, Gonzalez and Manhattan District Attorney Cy Vance, along with 29 other prosecutors across the country, endorsed temporary release.").

[14] *Id.*

11

- "Tidwell's motion is based on his illnesses—which include his metastatic (stage IV) prostate cancer, hepatitis C, and hypertension—the COVID-19 pandemic, and his significant rehabilitation in prison"
- In custody since 1994, pleaded during middle of trial; life sentence
- 62 years old, FMC Butner
- Rejects "issue exhaustion"
- Was based on health even if not COVID-19
- 1B1.13 not binding – "Congress's unmistakable goal in passing the First Step Act was to "increase the use of compassionate release" and the way that "Congress chose to achieve this goal" was by "chang[ing] the process by which compassionate release could be obtained" with the intent for "the judiciary to take on the role that the BOP once held under the pre-First Step Act Compassionate Release Statute to be the essential adjudicator of compassionate release requests." Under the government's theory, every change in Tidwell's condition or in the extent of COVID-19 at Butner would require a new request so that the BOP could assess the exact risk at that moment. The Court will not create additional barriers when the intent of the First Step Act was to reduce them."

*United States v. Cazessus, 2020 WL 6081736, at \*1 (S.D. Cal. Oct. 15, 2020)*
- Lompoc, has served 1.5 years (33% of sentence)
- 71 years old, 60 months for drugs between the US and Mexico
- Throat cancer, history of meth abuse

### D. Releasing Miller

In light of the outbreak and Miller's diagnosed rare cancer, Miller's release does not present a danger to the safety of any other person or to the community and is in keeping with all relevant § 3553(a) factors. Releasing Miller will not only protect him from the risk of COVID-19 infection but also avoids the unavoidable impact upon the quality of the medical care he requires by taxing an already taxed system.[15] Moreover, his release will have the added benefit of opening a medical bed to other inmates who will need the medical attention with the coronavirus. For these reasons, compassionate relief is warranted.

---

[15] Natalie Hinton, Comment, *Curing the BOP Plague with Booker: Addressing the Inadequate Treatment in the Bureau of Prisons*, 41 J. Marshall L. Rev. 219, 231 (2007) (noting "BOP overpopulated and understaffed for years.")

Finally, the combination of factors, health conditions, COVID-19 risk, as well as post-sentencing rehabilitation, and the changing sentencing landscape justify granting compassionate release to Miller. More so, his BOP record does not show that he is violent or a threat to public safety.

Respectfully submitted,

Dated: October 5, 2022

*Darren Miller*

DARREN CANTRELL MILLER
REG. NO. 87992-020
USP YAZOO CITY
U.S. PENITENTIARY
P.O. BOX 5000
YAZOO CITY, MS 39194
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2022, a true and correct copy of the above and foregoing Supplemental Motion to Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).Based on Extraordinary and Compelling Reasons Related to COVID-19 Pandemic was sent via U. S. Mail, postage prepaid, to Michelle Schieber, Assistant U.S. Attorney at U. S. Attorney's Office, 300 Mulberry St., 4th Fl., Macon, GA 31202.

*Darren Miller*

DARREN CANTRELL MILLER